Jordon R. Harlan, Esq. (CA #273978)
**HARLAN HILLIER DIGIACCO LLP**
701 Island Avenue, Second Floor
San Diego, CA 92101
Telephone: 619.330.5120
Facsimile: 619.839.3895
Email: jordon@hhdlaw.com

Zackary S. Kaylor, Esq., (MN ID # 0400854)
*Pro Hac Vice to be filed*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
Email: zkaylor@johnsonbecker.com

***Attorneys for Plaintiff, David Bruce***

UNITED STATES DISTRICT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BRUCE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>IGLOO PRODUCTS, CORP.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. Strict Products Liability – Design Defect<br><br>2. Negligence/Negligent Product Liability – Negligent Design Defect |

Plaintiff, **DAVID BRUCE ("Plaintiff")**, by and through his undersigned counsel, **JOHNSON BECKER, PLLC** and **HARLAN HILLIER DIGIACCO LLP**, hereby submit the following Complaint and Demand for Jury Trial against Defendant **IGLOO PRODUCTS CORP., ("Defendant" or "Igloo")**, and alleges the following upon personal knowledge and belief, and investigation of counsel:

**NATURE OF THE CASE**

1. Defendant designs, manufactures, markets, imports, distributes and sells consumer products, including the subject "Latitude 90 Roller Cooler." (referred to hereafter as "Cooler(s)").

2. On or about August 11, 2024, Plaintiff and his family were camping at were camping at Lake Alpine, California.

3. Plaintiff needed to get water out of the cooler, so he went to remove the cooler from the bear box.

4. Plaintiff began sliding the cooler out of the bear box; with his left hand on the front handle and the right hand was reaching around to the back.

5. As he was sliding the cooler, the lever (which became caught on the bottom of the bear box) started to move up; causing Plaintiff's left index finger to become caught in the hinge.

6. Plaintiff's left index finger immediately began gushing blood, and Plaintiff soon realized the Cooler's tow handle had taken off the nail and a chunk of his left index finger.

7. The incident occurred as a result of the defective design of the subject Cooler, which allowed Plaintiff's hand to pinched between the tow handle and cooler during the normal, foreseeable use of the product.

8. As a result of the incident, Plaintiff continues to have numbness and pain in his left index finger, which is attributable to nerve damage.

9. On February 12, 2025, the Consumer Products Safety Commission ("CPSC") announced a recall of more than 1,000,000 of Defendant's Coolers, which includes the subject Cooler, after receiving "**12 reports of fingertip injuries, including fingertip amputations, bone fractures, and lacerations**" as a result of the tow handle pinching consumers' fingertips against the Coolers;

just as it did in this case. [1]

10. Defendant knew or should have known of these defects but has nevertheless put profit ahead of safety by continuing to sell their Coolers to consumers; sold their Coolers with a defective design, despite the extensive knowledge that the aforementioned injuries could and do occur; and failing to warn said consumers of the serious risks posed by the defects.

11. As a direct and proximate result of Defendant's conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

## PLAINTIFF DAVID BRUCE

12. Plaintiff is a resident and citizen of the city of San Lorenzo, County of Alameda, State of California.

13. On or about August 11, 2024, Plaintiff suffered serious and substantial injuries as the direct and proximate result of his dominant left index finger being crushed between the tow handle and body of the subject Cooler.

## IGLOO PRODUCTS, CORP.

14. Defendant Igloo Products Corp. is a Delaware Corporation with its principal place of business located at 777 Igloo Rd, Katy, TX 77494. At all times relevant, Defendants Products, Inc. substantially participated in the distribution, design, manufacture, and sale of the subject Cooler, which caused Plaintiff's injuries and damages.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

---

[1] *See* the CPSC Recall notice from February 12, 2025 (https://www.cpsc.gov/Recalls/2025/Igloo-Recalls-More-Than-One-Million-90-Quart-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards ), a copy of which is attached hereto as Exhibit A.

**FACTUAL BACKGROUND**

17. Defendant designs, manufactures, markets, imports, distributes and sells consumer products, including the subject Cooler at issue in this case.

18. On or about August 11, 2024, Plaintiff and his family were camping at were camping at Lake Alpine, California.

19. Plaintiff needed to get water out of the cooler, so he went to remove the cooler from the bear box.

20. Plaintiff began sliding the cooler out of the bear box; with his left hand on the front handle and the right hand was reaching around to the back.

21. As he was sliding the cooler, the lever (which became caught on the bottom of the bear box) started to move up; causing Plaintiff's left index finger to become caught in the hinge.

22. Plaintiff's left index finger immediately began gushing blood, and Plaintiff soon realized the Cooler's tow handle had taken off the nail and a chunk of his left index finger.

23. The incident occurred as a result of the defective design of the subject Cooler, which allowed Plaintiff's hand to pinched between the tow handle and Cooler during the normal, foreseeable use of the product.

24. As a result of the incident, Plaintiff continues to have numbness and pain in his left index finger, which is attributable to nerve damage.

25. On February 12, 2025, the Consumer Products Safety Commission ("CPSC") announced a recall of more than 1,000,000 of Defendant's Coolers, which includes the subject Cooler, after receiving "**12 reports of fingertip injuries, including fingertip amputations, bone fractures, and lacerations**" as a result of the tow handle pinching consumers' fingertips against the Coolers; just as it did this case. [2]

26. Defendant knew or should have known of these defects but has nevertheless put profit ahead of safety by continuing to sell their Coolers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to timely recall the dangerously defective Coolers

[2] *Id.*

regardless of the risk of significant injuries to Plaintiff and consumers like him.

27. By reason of the forgoing acts or omissions, the above-named Plaintiff and/or his family purchased their Cooler with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for their intended, foreseeable use.

28. However, the aforementioned Cooler was defectively designed by Defendant, placing the Plaintiff, his family, and similar consumers in danger while using the Coolers.

29. Defendants' Coolers possess defects that make them unreasonably dangerous for their intended use by consumers because of the risks of crush injuries described herein.

30. Economic, safer alternative designs were available that could have prevented the towing handle from crushing a consumers digits against it.

31. As a direct and proximate result of Defendant's intentional concealment of such defects, it's failure to warn consumers of such defects, its failure to timely remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous Cooler, which resulted in significant and painful bodily injuries

32. Consequently, the Plaintiff in this case seeks damages resulting from the use of Defendant's Cooler as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY – DESIGN DEFECT

PLAINTIFF, FOR A FIRST CAUSE OF ACTION AGAINST IGLOO PRODUCTIONS, CORP., ALLEGES AS FOLLOWS:

33. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

34. Plaintiff brings his claim for strict products liability - design defect under the consumer expectation test, in that an ordinary, reasonable consumer would not expect that the design of the handle of the subject Cooler would allow a consumer's digits to be becomes pinched between the tow

handle and Cooler during the normal, foreseeable use of the product.

35. At all relevant times, Defendant Igloo Products Corp. was engaged in the design, manufacture, assembly, marketing, distribution, and sale of the subject Cooler.

36. The subject Cooler was defectively designed and unreasonably dangerous for its intended and foreseeable use by consumers, including Plaintiff, in that an ordinary, reasonable consumer would not expect that the design of the handle of the subject Cooler would allow a consumer’s digits to be pinched between the tow handle and Cooler during the normal, foreseeable use of the product – for example, during the simple act of sliding the cooler out of the bear box.

37. At the time it was sold and when Plaintiff purchased and used it, the Igloo Cooler contained a design defect in its tow handle that created an unreasonable risk of injury. Specifically, due to the defective design in the tow handle, the Cooler failed to operate safely and effectively in a foreseeable and intended manner in that ordinary, reasonable consumer would not expect that the design of the tow handle of the subject Cooler could and would allow a consumer’s digits to be pinched between the tow handle and Cooler during the normal, foreseeable use of the product.

38. Defendant was negligent in that it failed to design the tow handle of the subject Cooler to guard against the dangers posed by its tow handle during its ordinary, foreseeable use – such as being slide out of a bear box.

39. The design defect in the tow handle existed at the time the Cooler left Defendant’s possession and was introduced into the stream of commerce.

40. Plaintiff’s purchase and use of the Igloo Cooler was the very type of use that Defendant intended and foresaw when designing and marketing the product.

41. Defendant expected and intended the subject Igloo Cooler to reach consumers, including Plaintiff, without any substantial changes or modifications from the condition in which it was sold.

42. Due to the defective design of the subject Coolers tow handle, the Cooler failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

43. Further, a reasonable consumer would not expect that the design of the tow handle of

the subject Cooler would allow a consumer's digits to be pinched between the tow handle and Cooler during the normal, foreseeable use of the product.

44. The dangerous nature of the Igloo Cooler's tow handle design was not open or obvious and could not have been reasonably detected by Plaintiff or any reasonable consumer prior to use.

45. As a direct and proximate result of Defendant's defective design of the tow handle of its Coolers, including the subject Cooler, the Plaintiff in this case suffered injuries and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, and all such other relief as the Court deems proper.

## SECOND CAUSE OF ACTION

## NEGLIGENCE/NEGLIGENT PRODUCTS LIABILITY – NEGLIGENT DESIGN DEFECT

PLAINTIFF, FOR A SECOND CAUSE OF ACTION AGAINST IGLOO PRODUCTIONS, CORP., ALLEGES AS FOLLOWS:

46. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

47. At all relevant times, Defendant Igloo Products Corp. was engaged in the design, manufacture, assembly, marketing, distribution, and sale of the subject Cooler.

48. Defendant has a duty of reasonable care to market and sell non-defective Coolers that are reasonably safe for their intended uses by consumers, such as Plaintiff.

49. Defendant failed to exercise ordinary care in the design of its Coolers in that Defendant knew or should have known that said Coolers created a high risk of unreasonable harm to the Plaintiff and consumers alike due to the dangers posed by its tow handle under ordinary use.

50. Specifically, due to the defective design, the Cooler failed to operate safely and effectively in a foreseeable and intended manner in that ordinary, reasonable consumer would not expect that the design of the handle of the subject Cooler would allow a consumer's digits to be pinched between the tow handle and Cooler during the normal, foreseeable use of the product – for example, while sliding the Cooler out of a bear box.

51. Defendant was negligent in the design of its Coolers in that, among other things, it:

a. Designed the tow handle of the subject Cooler in a manner that would allow a

consumer's digits to be pinched between the tow handle and Cooler during the normal, foreseeable use of the product; creating an unreasonably high likelihood that a user of the subject Cooler would become injured by the subject Cooler in the course of its foreseeable use.

b. Failed to properly design and sell the tow handle of the Coolers, despite having extensive knowledge that the aforementioned injuries could and did occur;

c. Failed to adequately test the tow handle of its Coolers; and

d. Failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the Plaintiffs' injuries and damages.

52. Plaintiff's injuries were not caused or contributed to by any negligence or fault of Plaintiff.

53. As a direct and proximate result of Defendant's negligence and the negligent design of its Coolers, including the subject Cooler, the Plaintiff in this case suffered injuries and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, and all such other relief as the Court deems proper.

## INJURIES & DAMAGES

54. As a direct and proximate result of Defendant's negligence and wrongful misconduct as described herein, Plaintiff has suffered and will continue to suffer physical and emotional injuries and damages including past, present, and future physical and emotional pain and suffering as a result of the incident. Plaintiff is entitled to recover damages from Defendant for these injuries in an amount which shall be proven at trial.

55. As a direct and proximate result of Defendant's negligence and wrongful misconduct, as set forth herein, Plaintiff has incurred and will continue to incur the loss of full enjoyment of life and disfigurement as a result of the incident. Plaintiff is entitled to recover damages for loss of the full enjoyment of life and disfigurement from Defendant in an amount to be proven at trial.

56. As a direct and proximate cause of Defendant's negligence and wrongful misconduct, as set forth herein, Plaintiff has and will continue to incur expenses for medical care and treatment,

as well as other expenses, as a result of the crush injury he suffered as a result of the incident. Plaintiff is entitled to recover damages from Defendant for his past, present and future medical and other expenses in an amount which shall be proven at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

A. That Plaintiff has a trial by jury on all of the claims and issues;

B. That judgment be entered in favor of the Plaintiff and against Defendant on all of the aforementioned claims and issues;

C. That Plaintiff recover all damages against Defendant, general damages and special damages, including economic, non-economic to compensate the Plaintiff for his injuries and suffering sustained because of the use of the Defendant's defective Cooler;

D. That all costs be taxed against Defendant;

E. That prejudgment interest be awarded according to proof; and

F. That this Court awards any other relief that it may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Amended Complaint and in the foregoing Prayer for Relief.

Dated: July 29, 2026

**HARLAN HILLIER DIGIACCO LLP**

*/s/ Jordon R. Harlan, Esq*

Jordon R. Harlan, Esq.
*In association with*:
**JOHNSON BECKER, PLLC**
Zack S. Kaylor, Esq.,
*Pro Hac Vice to be filed*

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury of all the claims asserted in this Complaint so triable.

Dated: July 29, 2026

**HARLAN HILLIER DIGIACCO LLP**

*/s/ Jordon R. Harlan, Esq*

Jordon R. Harlan, Esq.
*In association with*:
**JOHNSON BECKER, PLLC**
Zack S. Kaylor, Esq.,
*Pro Hac Vice to be filed*